IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| H.P. et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Board of Education of the City of Chicago, et al., ) <br> ) <br> Defendants. ) | Case No. 1:18-cv-00621 <br><br> Hon. Judge Sara Ellis <br> Hon. Magistrate Judge Maria Valdez |

**PLAINTIFFS' OPPOSITION TO CHICAGO PUBLIC SCHOOL'S
MOTION TO DISMISS**

## **TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ............................................................................................................................ 1

**FACTS** ............................................................................................................................................... 1

**ARGUMENT** .................................................................................................................................... 7

**I.**      **Plaintiffs Adequately Alleged a Valid Claim Under IDEA that Plaintiffs Are Denied a FAPE** .................................................................................................................. 7

**II.**     **Plaintiffs Are Not Required to Exhaust Administrative Remedies Because to Do So Would be Futile and Inadequate.** ............................................................................ 8

       A.      H.P., E.V. and Their LEP Parents Have Exhausted Their Administrative Remedies. ................................................................................................................ 8

       B.      Exhaustion is Not Required as Any Attempt Would Be Futile. ............................ 9

**III.**    **Plaintiffs May Pursue Title VI Violations in Cases of Intentional Discrimination** ................................................................................................................ 12

**CONCLUSION** .............................................................................................................................. 15

## INTRODUCTION

Despite a clear legal mandate and pressing need, Chicago Public Schools ("CPS") has no policy or practice to provide competent interpretation services or to translate vital documents so that Limited English Proficient ("LEP") parents may meaningfully participate in the Individualized Education Program ("IEP") process for their children with disabilities, as non-LEP parents do and as the law requires. CPS's Motion to Dismiss minimizes, mischaracterizes, and omits facts alleged in the Complaint and the law on which Plaintiffs' allegations rely. In doing so, CPS ignores the crux of harm Plaintiffs allege: failing to ensure that LEP parents can meaningfully participate in their children's education, including the IEP process, and thereby denying those students a free appropriate public education ("FAPE") mandated by federal law. Contrary to CPS's motion, Plaintiffs adequately allege claims under the IDEA, Title VI, the EEOA and Section 504. CPS's motion to dismiss should be denied.

## FACTS

### 1. FAPE Violations

CPS denied the Parent Plaintiffs[1] their right to meaningfully participate in their children's IEP process and, as a consequence, denied a FAPE to those children with disabilities. The Complaint clearly and specifically alleges the facts as to each Parent Plaintiff and Student Plaintiff, establishing CPS's violation of the IDEA by denying these LEP parents their right to meaningfully participate in their children's IEP meetings. *See e.g.,* ECF. No. 1. The key facts alleged as to each group of plaintiffs (LEP parents and child) are set forth below:

- **Plaintiffs H.P., Victoria G., and Hector P.:** Victoria G. and Hector P.'s native language is Spanish and Spanish is the primary language spoken in their home. *Id.* at

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Complaint.

1

¶¶ 114-115.[2] Prior to H.P.'s May 2016 IEP Meeting, CPS knew that an interpreter was necessary for these LEP parents to participate meaningfully in the IEP. *Id.* at ¶ 116. The school social worker, who was not trained as an interpreter, served as an interpreter at H.P.'s IEP meeting. *Id.* at ¶ 117. The social worker was not a competent interpreter; H.P.'s parents did not understand what happened at the meeting and left unaware that major changes had been made regarding H.P.'s placement and services. *Id.* at ¶¶ 117-118. CPS knew that Victoria G. and Hector P. cannot read in English, yet did not provide H.P.'s parents with vital IEP documents in Spanish. *Id.* at ¶¶ 116-117, 120. CPS provided no notice in Spanish that H.P.'s transportation and behavioral support services were removed and that H.P. would be returned to his neighborhood school. *Id.* at ¶ 121. H.P.'s parents were unaware of these changes until days before the start of the new school year when they went to what they thought was H.P.'s school to pick up a supply list and learned that he was no longer enrolled there. *Id.* at ¶ 122. H.P. missed time in school and was denied appropriate related services because of CPS' failure to comply with IDEA and provide his parents the ability to meaningfully participate in his IEP. *Id.* at ¶ 123.

- **Plaintiffs E.V., Carlos V. and Aixia H.:** E.V.'s parents Carlos V. and Aixia H. speak, read, and write in Spanish. *Id.* at ¶ 141. E.V.'s IEPs indicate that Spanish is the primary language spoken in the home and that an interpreter is necessary for communication. *Id.* at ¶ 142. Yet, CPS failed to provide Carlos V. and Aixia H. with documents translated into Spanish. *Id.* at ¶ 143-44. At E.V.'s IEP meeting on March 7, 2016, CPS failed to provide an interpreter. *Id.* at ¶ 146. As such, Carlos V. understood very little of what was said by others and he could not convey information about E.V.'s behaviors and the school's failure to address them. *Id.* at ¶ 147. Similarly, Aixia H. understood very little of what was said by others at the March 2016 IEP meeting. *Id.* at ¶ 148. Aixia H. attempted to raise concerns about E.V.'s health and educational needs, but those concerns went unaddressed in the meeting and were not reflected in E.V.'s IEP. *Id.* at ¶ 148. CPS provided E.V.'s IEP to Carlos V. and Aixia H. solely in English. *Id.* at ¶ 149. Aixia requested that all future communication proceed in Spanish in a telephone call with E.V.'s school social worker on February 14, 2017. *Id.* at ¶ 152. Despite this request, CPS continued to send vital IEP documents solely in English. *Id.* at ¶ 152.

- **G.G. and Asencion G.:** G.G.'s mother Asencion G. speaks, reads, and writes in Spanish. *Id.* at ¶ 219. G.G.'s IEP indicates that Spanish is the primary language spoken in the home and that an interpreter is needed for parent communication. *Id.* at ¶ 220. Asencion G. consistently requested written translation of IEP documents, but CPS failed to provide translations of vital IEP process documents. *Id.* at ¶ 221, 225. The school G.G. attended in sixth grade refused to translate any IEP documents other than IEP progress reports. *Id.* at ¶ 221. CPS also failed to provide competent interpretation services at G.G.'s February 2016 IEP meeting, and Asencion G. did not understand the meeting. *Id.* at ¶ 224. At that meeting, the team decided, without Asencion's input, to

---

[2] Plaintiffs, upon Defendants' stipulation, have filed a First Amended Complaint, solely to remove two named plaintiffs that no longer reside within the CPS school district or the state of Illinois. All paragraph numbers in this brief are to the original Complaint (ECF. No. 1), to be consistent with the citations in CPS's Motion.

2

change G.G.'s school placement to a therapeutic day school. *Id.* at ¶ 224. Despite her request, Asencion G. did not receive requested information in Spanish on therapeutic day schools to visit. *Id.* at ¶ 225. After Asencion G. obtained help from a bilingual attorney, G.G. finally enrolled in the therapeutic day school – more than six weeks after the February 2016 IEP meeting. *Id.* at ¶¶ 226-227.

- **Plaintiffs R.L. and Mireya L.:** R.L.'s mother Mireya L. speaks, reads, and writes in Spanish. *Id.* at ¶ 166. R.L.'s IEPs indicated that Spanish is the primary language spoken in the home and that an interpreter is needed for parent communications. *Id.* at ¶ 167. Despite knowing this, CPS did not provide Mireya L. with vital IEP process documents translated into Spanish. *Id.* at ¶ 169. Although interpretation services were sometimes provided at R.L.'s IEP meetings, the interpretations were poor, incompetent and amounted to no meaningful interpretation at all – Mireya L. could not understand the proceedings and the persons interpreting wrongly summarized information, inserted themselves into the dialogue, and misinterpreted key terms. *Id.* at ¶ 170. At R.L.'s January 2017 IEP meeting, no interpretation services were provided and the meeting was conducted fully in English. *Id.* at ¶ 171. Mireya L. did not understand the meeting or R.L.'s revised IEP, which CPS gave to Mireya L. in English only. *Id.* at ¶ 171-172. Because Mireya could not understand what took place at the meeting, she did not know that R.L. was scheduled to graduate and that his special education eligibility would be terminated. *Id.* at ¶ 172. R.L. spent a total of three months without educational instruction or related services as a result of CPS's failure to translate vital documents and offer competent interpretation services at his IEP meetings. *See Id.* at ¶¶ 171-174.

- **J.B. and Miriam B.:** J.B.'s mother Miriam B. speaks, reads, and writes in Spanish. *Id.* at ¶ 209. J.B.'s IEPs indicate that Spanish is the primary language spoken in the home and have also indicated that an interpreter is necessary for communication. *Id.* at ¶ 210. Yet, CPS failed to provide Miriam B. with vital IEP process documents translated into Spanish. *Id.* at ¶ 213. CPS also failed to provide competent interpretation services at J.B.'s March 2016 domain meeting. *Id.* at ¶¶ 212-213. Instead, CPS allowed the school's special education case manager to serve as the interpreter for the meeting, while also serving in her role as the case manager. *Id.* The case manager failed to interpret the entire conversation. *Id.* at ¶¶ 213-214. Miriam B. was unable to convey information she had about J.B.'s behaviors in school and she was unable to request the particular evaluations she believed were appropriate. *Id* at ¶ 212, 214. Miriam B. did not receive written translations of forms presented to her at the meeting, and as a result was unclear about the types of assessments she consented to for J.B. *Id.* at ¶ 213. J.B. was not evaluated by the social worker following that meeting, despite Miriam B.'s belief that she had requested such an evaluation. *Id.* at ¶¶ 214-215. J.B. ultimately missed six months of social-work services following CPS's failure to translate vital documents and competently interpret the meeting. *Id.* at ¶ 217.

- **Plaintiffs J.M. and Rosalba C.:** J.M.'s mother Rosalba C. speaks, reads, and writes in Spanish. *Id.* at ¶ 200. J.M.'s IEP indicated that the primary language spoken in his home is Spanish and that an interpreter is needed for parent communication. *Id.* at ¶ 201. CPS failed to provide Rosalba C. with vital IEP process documents translated into Spanish.

3

*Id.* at ¶¶ 203-204. Further, CPS failed to provide interpretation services at J.M.'s November 2016 eligibility meeting, which was conducted fully in English. *Id.* As such, Rosalba C. was precluded from participating in the meeting. *Id.* at ¶ 203. The team – without Rosalba C.'s input – decided that J.M. would be exited from special education services. *Id.* at ¶ 204. Rosalba C. did not understand why J.M. was being exited, and could not explain her disagreement to the IEP team. *Id.* Because Rosalba C. did not receive evaluation data in Spanish, she could not review the data the IEP team relied upon to make its decision. *Id.* She twice requested additional evaluations by submitting her request in writing, but CPS denied her request by responding solely in English. *Id.* at ¶ 205. CPS ultimately denied J.M. special educational services for more than a year until J.M. obtained legal representation and was reevaluated. *Id.* at ¶ 206.

- **Plaintiffs O.L. and Xi Long L.:** O.L.'s father Xi Long L. speaks in Mandarin, and reads and writes in Chinese Simplified. *Id.* at ¶ 188. O.L.'s IEP indicates that Mandarin is the primary language spoken in the home and that an interpreter is needed for parent communication. *Id.* at ¶ 189. When Xi Long L. completed CPS's Home Language Survey (which is provided in English) he believed he was requesting documents translated into Chinese Simplified and interpretation services. *Id.* at ¶ 190. CPS did not provide Xi Long L. with any vital IEP process documents translated into Chinese Simplified. *Id.* at ¶ 192. On October 3, 2017, Xi Long L. attended an IEP meeting for O.L. *Id.* at ¶ 193. CPS did not provide an interpreter. *Id.* Xi Long L. requested that CPS provide at least a teleinterpreter. *Id.* CPS denied this as well. *Id.* Instead, CPS used web-based automated translation, Google Translate, to attempt to communicate with Xi Long L. *Id.* Xi Long L. had no effective way to communicate with other members of the IEP team to ask questions or convey information. *Id.* Using his limited English, Xi Long L. tried to communicate a request for additional services for his daughter, but he did not understand if his request was understood or granted. *Id.* at ¶ 194. Xi Long L. also wanted to ask more questions about his daughter's lack of progress and strategies he could use at home, but could not ask these questions without an interpreter. *Id.* at ¶ 195. Xi Long L. did not understand what had been discussed or decided in this meeting. *Id.* at ¶ 196. As a result of CPS's violations of the law, Xi Long L. was denied his right to meaningfully participate in the IEP process. *Id.* at ¶¶ 194-197.

- **M.P. and Izabela P.:** M.P.'s mother Izabela P. speaks, reads, and writes in Polish. *Id.* at ¶ 230. M.P.'s IEP indicates that Polish is the primary language spoken in the home and that an interpreter is needed for parent communication. *Id.* at ¶ 231. Despite knowing this, CPS failed to provide Izabela P. with written translations into Polish of vital IEP process documents. *Id.* at ¶ 232. Because Izabela P. could not read the reports generated by the IEP team related to her son's progress, she was unable to participate in the discussion at the IEP meeting. *Id.* at ¶ 234. M.P. has not progressed in school because of this communication breakdown. *Id.* at ¶ 235.

## 2. Systemic Violations

Despite providing special education services to over 21,000 students with IEPs who live in households where English is not spoken in the home during the 2016-2017 school year, CPS does

4

not have a policy or practice to provide written translations of vital IEP process documents or competent interpretation services at IEP meetings. *See Id.* at ¶¶ 92-94. CPS has no policy or practice to determine the competence of the CPS personnel who sometimes serve as interpreters at IEP meetings. *Id.* at ¶ 94. Likewise, CPS has no policy or practice to provide training or guidance regarding standards of interpretation to such personnel. *Id.* at ¶ 95. As a result of these systemic failures, CPS personnel who intermittently serve as interpreters for LEP parents in IEP meetings do not follow basic standards of interpretation and do not accurately convey important information to and from LEP parents. *Id.* at ¶¶ 97-98. As a result, LEP parents are systemically barred from participating in the creation of an appropriate educational plan for their children with disabilities. *Id.* at ¶ 99.

### 3. Exhaustion of Administrative Remedies

On April 5, 2017, Victor G. and Hector P. filed a Due Process Complaint Notice alleging that CPS's failure to provide translated vital IEP documents and competent interpreters for special education meetings denied H.P. a FAPE. *Id.* at ¶ 124. In a pre-hearing ruling, the Hearing Officer struck all of H.P.'s systemic requests, concluding that she did not have jurisdiction to adjudicate a systemic issue or grant a systemic, district-wide remedy. *Id.* at ¶ 127.

On June 29, 2017, Carlos V. and Aixia H. filed a Due Process Complaint Notice alleging that CPS's failure to provide translated vital IEP process documents and interpreters for special education meetings denied E.V. a FAPE. *Id.* at ¶ 156. In a prehearing ruling, the Hearing Officer struck all of E.V.'s systemic requests for relief for lack of jurisdiction. *Id.* at ¶158. Like the Hearing Officer in H.P.'s case, E.V.'s Hearing Officer also concluded that she did not have jurisdiction to adjudicate a systemic issue or grant a systemic, district-wide remedy. *Id.*

As to the individual claims, the Hearing Officers made opposite rulings. As to Carlos V. and Aixia H.'s claims, the Hearing Officer found that CPS's failure to provide interpreters and

5

translate vital IEP documents did not deny E.V. a FAPE. *Id* at ¶ 159. After receiving the Hearing Officer's Decision and Order, CPS convened a meeting to plan for E.V.'s reevaluation. CPS did not provide the Consent for Reevaluation and the Assessment Plan in Spanish and provided only an incompetent and inappropriate interpreter (the principal) who had to be prompted to interpret the discussion. *Id.* at ¶ 161. E.V., Carlos V. and Aixia H. filed this action within 120 days of the Hearing Officer's Order. *Id.* at ¶ 164.

In H.P.'s case, the Hearing Officer ruled in his favor, finding that CPS's failure to provide qualified interpreters and translated documents violated H.P.'s and his parents' legal rights to a FAPE under the IDEA. *Id.* at ¶ 129. The Hearing Officer ordered CPS to provide qualified Spanish/English language interpreter services to Victoria G. and Hector P. at all future IEP meetings and ordered that all vital IEP process documents be translated into Spanish. *Id.* at ¶¶ 131-133. To date, CPS has not complied with this Order. *Id.* at ¶ 134. H.P., Victoria G. and Hector P. filed this action within 120 days of the Hearing Officer's Order. *Id.* ¶ 139.

Plaintiffs who have not filed due process complaints related to their language access injuries – G.G. and Asencion G.; R.L. and Mireya L.; J.B. and Miriam B.; J.M. and Rosalba C.; O.L. and Xi Long L.; and M.P. and Izabela P. – all have claims similar to those systemic claims filed by E.V. and H.P., but struck in the due process proceedings. *Id.* at ¶¶ 87-88, Prayer F-I.

## LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) challenges the *sufficiency* of the complaint, not its merits." *Equal Employment Opportunity Comm'n v. United Parcel Serv., Inc.*, 2014 WL 538577, at *1 (N.D. Ill. Feb. 11, 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (emphasis added)). "In evaluating the sufficiency of the complaint, [Courts] view it in the light most favorable to the plaintiff, taking as true all well-

pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of a claim's basis and be facially plausible. *United Parcel Serv.*, 2014 WL 538577, at *1 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

### I. Plaintiffs Adequately Alleged a Valid Claim Under IDEA that Plaintiffs Are Denied a FAPE

CPS's opening argument is a strawman constructed only by ignoring the extensive and specific facts alleged in the Complaint. CPS bases its argument on the assertion that Plaintiffs fail to allege a violation of the IDEA because no parent was denied meaningful participation in the IEP process and no student was denied a FAPE. ECF. No. 54 at 9. But the alleged facts are expressly to the contrary. *See supra* at 1-4; ECF. No. 1 at ¶¶ 113-235. Rather than accept as true the detailed allegations of the Complaint and argue why these do not support a claim, CPS disputes the alleged facts and argues that its counter version of facts do not support a claim.[3] ECF. No. 54 at 10-11. Under the IDEA, procedural inadequacies that significantly impede a parent's ability to participate in the IEP process or that deprive a student of educational benefit amount to a denial of FAPE. 20 U.S.C. § 1415(f)(3)(E)(ii). Each and every Plaintiff more than adequately alleges that CPS's failure to provide competent interpretation and/or to translate documents significantly impeded these LEP parents' ability to participate in their children's IEPs and therefore denied the students a FAPE. Plaintiffs allege actionable claims under the IDEA.

---

[3] CPS also heavily relies on *Heather S.*, which was at the summary judgment stage and therefore is inapplicable to this stage of the proceedings. *Heather S. v. State of Wis.*, 125 F.3d 1045, 1059 (7th Cir. 1997). Further, the Court reaffirmed that "procedural inadequacies that result in the loss of educational opportunity… clearly result in the denial of a [FAPE]." *Id.* at 1061.

7

Further, an Eastern District of Pennsylvania court recently denied a school district's motion to dismiss where similar plaintiffs – children with disabilities and their LEP parents – raising nearly identical claims adequately alleged "that the School District ha[d] adopted a policy in contravention of [IDEA] statutory and regulatory requirements" such as "a general mandate that certain documents be provided to LEP parents in writing and in their native language." *T.R. v. Sch. Dist. of Philadelphia*, 223 F. Supp. 3d 321, 326 (E.D. Pa. 2016). By that same reasoning, accepting the facts alleged as true, CPS's motion should fail. Plaintiffs have more than sufficiently pled that CPS's failure to comply with the IDEA's procedural requirements significantly impeded the Parent Plaintiffs' ability to meaningfully participate in the IEP process and deprived the Student Plaintiffs of educational benefits, thereby denying students a FAPE.

## II. Plaintiffs Are Not Required to Exhaust Administrative Remedies Because to Do So Would be Futile and Inadequate.

### A. H.P., E.V. and Their LEP Parents Have Exhausted Their Administrative Remedies.

If any of the Plaintiffs are required to exhaust their administrative remedies before bringing this class action, H.P., E.V. and their LEP parents have done so. These plaintiffs sought individual and systemic relief in their respective administrative proceedings and received final orders from their respective hearing officers. ECF No. 1 at ¶¶ 127, 129, 158-159.

CPS's argument that H.P. and E.V.'s claims are moot because they received some administrative remedies ignores the outcome of that process. First, the only relief Plaintiffs seek in this action is systemic relief to require CPS to comply with the law by, among other things, providing competent interpreters and translated documents to LEP parents. *Id*. at ¶ 88, Prayer F-I. H.P. and E.V. both attempted to obtain such relief through the administrative process and in both cases the hearing officers struck those demands pre-hearing and ruled that they did not have

the jurisdiction to adjudicate a systemic issue or grant a systemic, district-wide remedy. *Id.* at ¶¶ 127, 158. Plaintiffs' claim for systemic relief is not moot.

Second, on the merits of E.V.'s individual claim that CPS violated IDEA by failing to provide his parents a competent interpreter and translate documents, E.V. and his LEP parents lost. *See supra* at 6; ECF No. 1-4 at 49, 51. Their claims are not moot. Although H.P. and his LEP parents prevailed on this claim in their Due Process hearing, that victory was illusory and the ordered relief has not been provided. ECF. No. 1 at ¶ 134. The Hearing Officer ordered CPS to provide qualified Spanish/English language interpreter services to Victoria G. and Hector P. at all future IEP meetings and ordered that all vital IEP process documents be translated into Spanish. *Id.* at ¶¶ 131-133. But CPS has not complied with this Order. *Id.* at ¶ 134. H.P., Victoria G. and Hector P.'s claims are not moot. Instead, they demonstrate why systemic relief is the only viable remedy here. Only by changing CPS's policy and practices will Plaintiffs obtain the relief they seek going forward. *Id.* at ¶¶ 13, 134.

### B. Exhaustion is Not Required as Any Attempt Would Be Futile.

The Plaintiffs that did not exhaust their administrative remedies were not required to do so. Parents need not exhaust their administrative remedies under IDEA in all instances, such as when administrative review "would be futile or inadequate." *See e.g.*, *Honig v. Doe*, 484 U.S. 305, 327 (1988)*; Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 494 (7th Cir. 2012). Even the case on which CPS relies supports the notion that "some IDEA violations may implicate the structure of a school district's special education program and may not be remediable through ordinary administrative review." *Jamie S.*, 668 F.3d at 494 n. 3. As the very case law CPS relies upon notes, "[i]f a plaintiff seeks a remedy for an injury that could not be redressed by the IDEA's administrative procedures, exhaustion is unnecessary." ECF No. 54-1, *Z.F. et al. v. Ripon Unified School District, et al.,* 08-17708 Slip Op. at 4 (9th Cir. Feb. 10, 2010).

Rather than H.P.'s due process proceeding confirming that "it would not be futile for any of the other Plaintiffs to exhaust their administrative remedies," as CPS argues, H.P.'s and E.V.'s proceedings establish the opposite. *See* ECF. No. 54 at 13. The systemic relief Plaintiffs seek is precisely the type of systemic relief that was struck from H.P. and E.V.'s due process complaints as being ***outside the hearing officer's jurisdiction***. *See* ECF. No. 1 at ¶¶ 13, 88, 158; ECF. No. 1-1 at 2 (finding officer did "not possess the requisite jurisdiction under IDEA" to adjudicate the systemic failure issue or award systemic relief); ECF No. 1-3 at 2 ("This hearing officer does not have jurisdiction over systemic failures."). It would be futile for the remaining named plaintiffs to first seek systemic-relief that would inevitably be struck during the administrative process.

CPS relies on an unpublished Ninth Circuit opinion to incorrectly argue exhaustion necessarily is not excused if another named plaintiff receives favorable outcomes from the administrative process. ECF. No. 54 at 13-14. The Ninth Circuit's assessment did not end once the court determined some named plaintiffs had received relief from the administrative process, however. ECF No. 54-1, *Z.F.,* 08-17708 at 4. Rather, the court assessed all four excuses for exhaustion in the Ninth Circuit. *Id.* For instance, the court also assessed whether there were systemic violations of the IDEA that would excuse exhaustion of the administrative process, and found systemic violations were not alleged because the Plaintiffs challenged only a provision of one program of services. *Id.* Here, however, the Plaintiffs allege systemic and repeated violations throughout the IEP process in which CPS did not provide translation of vital documents or competent interpretation services. ECF. No. 1. at ¶¶ 103, 240-241, 270-272.

Further, Plaintiffs need not exhaust administrative procedures when "plaintiffs allege a systemic failure and seek system-wide reforms;" where defendant violates federal law "and the administrative system lacked power to change them;" or in cases where "school officials

10

repeatedly violated procedural safeguards." *Bills by Bills v. Homer Consol. Sch. Dist. No. 33-C*, 959 F. Supp. 507, 512 (N.D. Ill. 1997). A claim is considered "systemic" when it "implicates the integrity or reliability of the IDEA dispute resolution procedures themselves [. . .]" and if the administrative process is incapable of "correcting the problem." *Waters v. S. Bend Cmty. Sch. Corp.*, 1999 WL 528173, at *4 (7th Cir. 1999) (quoting *Doe v. Arizona Dep't of Ed.,* 111 F.3d 678, 681 (9th Cir. 1997)).

Contrary to CPS's assertions, the Plaintiffs have not merely alleged that CPS's violations are "systemic." ECF. No. 54 at 13. Instead, Plaintiffs have pointed to specific, system-wide actions (or inaction) taken by CPS that amount to systemic and structural failures of the IEP and special education process that cannot be corrected through the dispute resolution process. *See* ECF No. 1 at ¶ 88. For instance, the Plaintiffs allege that:

> CPS ***does not have a policy or practice*** to provide written translation of vital IEP process documents to LEP parents. On a ***systemic*** basis, CPS fails to provide LEP parents with written translations of vital IEP process documents including, but not limited to, the IEP, Notification of Conference, Conference Recommendations, Procedural Safeguards, Notice, Consent for Initial Evaluation, Consent for Reevaluation, Evaluation Reports, Eligibility Determination, Manifestation Determination, IEP Progress Reports, and Medical Consent Forms.

ECF. No. 1 at ¶ 93 (emphasis added). The Plaintiffs also allege that CPS has "no policy or practice to determine the competence of the CPS personnel who sometimes serve as interpreters at IEP meetings and other special education meetings" or "to provide training or guidance regarding the standards of interpretation to CPS personnel who sometimes serve as interpreters at IEP meetings and other special education meetings." *Id.* at ¶¶ 94-95. Further, Plaintiffs plead that these failures include interpreters summarizing reports rather than interpreting in full, omitting conversations in interpretations, editorializing reports, and failing to interpret or understand technical vocabulary related to special education laws and the relevant disabilities, among other failures. *Id* at ¶ 98.

These allegations of systemic violations are further supported by the allegations detailing the named Plaintiffs' own experiences. *Id.* at ¶¶ 113-235.

The *T.R.* court rejected similar exhaustion arguments where the plaintiffs, who alleged similar violations under the IDEA, "sufficiently allege[d] a systemic legal deficiency – namely, the insufficient and untimely provision of interpretation and translation services" that excused them from exhausting administrative remedies. *T.R.*, 223 F. Supp. 3d at 329. Similarly to H.P.'s and E.V.'s Hearing Officers, the Hearing Officer of one named plaintiff in *T.R.* concluded that he did not have the authority to make a system-wide finding. *Id.* at 329, n. 7. The *T.R.* court relied on these findings to conclude "that the administrative process is an inadequate mechanism for resolving the supposedly systemic deficiencies Plaintiffs have identified" and the court held that it would be futile for the other named plaintiffs to pursue administrative remedies. *Id.* So too, here, the Plaintiffs' allegations of systemic violations of the IDEA and their inability to obtain systemic relief through the IDEA dispute resolution process excuses them from exhausting administrative remedies.

### III. Plaintiffs May Pursue Title VI Violations in Cases of Intentional Discrimination

CPS's argument that Plaintiffs' Title VI claim "should be dismissed because there is no private right of action for disparate impact discrimination under Section 602 of Title VI or its implementing regulations" ignores that Plaintiffs' Complaint is replete with allegations of ***intentional*** – not disparate impact – discrimination, and that Plaintiffs rely on both Section 601 of Title VI and the federal regulations promulgated pursuant to Section 602 of Title VI. *Compare* ECF. No. 54 at 15 *with* ECF. No. 1 at 261, 264. Accordingly, CPS's reliance on *Alexander v. Sandoval* is misplaced, because (1) the Court dismissed the action based on disparate impact, not intentional discrimination, under Section 602, and (2) it is well settled that plaintiffs may bring a Title VI private cause of action for ***intentional*** discrimination. *See e.g.*, *Sandoval v. Alexander,*

12

532 U.S. 275, 286 (reasoning that there is only a private right of action under Title VI for intentional discrimination); *Junhao Su v. E. Illinois Univ.*, 565 F. App'x 520, 521 (7th Cir. 2014) (relying on *Sandoval* to hold that Title VI protects against intentional discrimination). Moreover, CPS's focus on the Section 602 regulations is similarly misplaced. The Supreme Court found that a failure to comply with Section 602 regulations is actionable if it is also a failure to comply under Section 601. *Sandoval*, 532 U.S. at 286. Simply put, private causes of action for Title VI violations may be brought under Sections 601 or 602 if the alleged discrimination is intentional.

The U.S. Department of Justice ("DOJ"), which was designated by Congress to interpret and enforce Title VI, confirmed in *T.R.* that "claims of intentional discrimination by LEP individuals, such as the claims [alleged by children with disabilities and their LEP parents in *T.R.*], can be made under Title VI." Ex. A, Statement of Interest at 6. Rejecting the Philadelphia school district's argument that *Sandoval* bars plaintiffs "from enforcing the regulations promulgated under Section 602 of Title VI," the same argument CPS makes here, the DOJ explained that *Sandoval* "does not bar a private plaintiff from asserting an ***intentional*** discrimination claim under Title VI." *Id.* at 15-16 (emphasis added). The DOJ reasoned that the *T.R.* plaintiffs sufficiently alleged a claim under Title VI because their factual allegations followed the Third Circuit standard for intentional discrimination. *Id.* at 18-19. Ultimately, the *T.R.* court found that the language-based discrimination allegations brought under Sections 601 and 602 of Title VI, supported by facts related to the school district providing incomplete interpretation and translation services to LEP parents during the IEP process, were sufficient to state a claim under Title VI and denied the school district's motion to dismiss. *T.R.*, 223 F. Supp. 3d at 335. Likewise, CPS's argument that *Sandoval* bars Plaintiffs' Title VI claim should be rejected.

13

In the Northern District of Illinois, intentional discrimination is sufficiently alleged where "plaintiff[s] allege[] that [they were] treated differently than other students because of [their] race or national origin, and [have] provided specific examples of the ways in which [they were] treated differently." *Marcial v. Rush Univ. Med. Ctr.*, 2017 WL 2180503, at *4 (N.D. Ill. May 18, 2017); *see also Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 721 (N.D. Ill. 2015). Further, courts typically determine whether knowledge of the plaintiff's race, ethnicity, or national origin was alleged. *See Sudduth v. Donnelly*, 2009 WL 918090, at *4 (N.D. Ill. Apr. 1, 2009). Taking the facts alleged to be true, Plaintiffs made precisely such allegations to establish plausible Title VI claims of intentional discrimination.

Plaintiffs allege, on a systemic basis and in each of their individual cases, that CPS is aware of the Parent Plaintiffs' need for competent interpretation and translation services to ensure they can meaningfully participate in their children's IEP processes, and that LEP parents cannot meaningfully participate in IEP meetings in the same manner as parents who are not LEP. For instance, the Plaintiffs allege that:

- the Student Plaintiffs' IEPs indicate that their parents are LEP and an interpreter is needed for communication (ECF. No. 1 at ¶ 115, 142, 167, 189, 201, 210, 220, 231);

- several Parent Plaintiffs requested interpreters or translation services in their native language, but were denied (*Id.* at ¶¶ 152, 193 221, 225);

- CPS is aware of the "widespread need of LEP parents to obtain timely and complete translations of vital documents and the assistance of a competent interpreter," but "[d]espite this knowledge... CPS systematically fails to provide translated IEP process documents into the LEP parents' native language and fails to provide competent interpreters" (*Id.* at ¶¶ 103, 270);

- CPS "intentionally and with deliberate indifference, … failed to take reasonable steps to develop and implement policies (1) requiring the provision of translated documents and competent interpreters to LEP parents in the IEP process and (2) setting standards and practices for the provision of these vital services" (*Id.* at ¶ 272);

- CPS "refus[es] to completely and timely translate vital IEP process documents and to provide competent interpreters necessary for LEP parents of children with disabilities,

14

> [and thereby] intentionally and with deliberate indifference, denie[s] LEP parents of children with disabilities the right to participate meaningfully in the IEP process" (*Id.* at ¶ 274);

- CPS failed its obligation under Title VI when it failed to "take reasonable steps to ensure that [LEP parents] have meaningful access to the programs, services and information CPS provides to English speaking parents of children with disabilities." (*Id.* at ¶ 275).

Through the named Plaintiffs' experiences, Plaintiffs also allege specific examples where the named Plaintiffs were not able to participate in IEP meetings in the manner mandated by law and as allowed to non-LEP parents. For instance, the LEP parents alleged that they received no interpretation services or were unable to voice opinions or understand the substance of IEP meetings or plans due to incompetent interpreting. *Id.* at ¶¶ 118, 148, 170-171, 193, 203. The LEP parents also alleged they received consent forms, IEPs, and other vital IEP documents in English only. *Id.* at ¶¶ 119-120, 126, 149, 173, 182, 184, 192. Accordingly, Plaintiffs have adequately alleged that they have suffered intentional discriminated in violation of Title VI.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny CPS's Motion to Dismiss in its entirety.[4]

---

[4] Further, CPS's request for dismissal with prejudice on its initial motion to dismiss is extreme and is not consistent with standard practice in the Seventh Circuit. *See, e.g., Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem[.]"); *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint.").

Dated: November 16, 2018                               Respectfully submitted,

/s/ *Luke C. Ruse*

**KIRKLAND & ELLIS LLP**                               **EQUIP FOR EQUALITY, INC.**

Donna M. Welch, P.C.                                   Olga Pribyl
Luke C. Ruse                                           Barry Taylor
300 North LaSalle                                      Margo Weinstein
Chicago, IL 60654                                      20 N Michigan, Suite 300
Tel: (312) 862-2000                                    Chicago, IL 60602
Fax: (312) 862-2200                                    Tel: (312) 341-0022

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2018 I caused a true and correct copy of the foregoing to be filed through the Court's Electronic Case Filing system, which will send notification to all counsel of record.

/s/ *Luke C. Ruse*
Luke C. Ruse